## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BISHOP EDWARD CARTER, ET AL. V. JACOB B. HINKLE.

March 7, 1949.

Record No. 3457.

Present, All the Justices.

The opinion states the case.

*Woods, Rogers, Muse & Walker* and *Sidney F. Parham, Jr.,* for the plaintiffs in error.

*J. C. Goodwin,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

A taxicab owned and driven by Hinkle was involved in a head-on collision with an automobile owned by the defendant, Smith, and operated by his agent, the defendant, Carter. The collision occurred in Alleghany county, on U. S. Route 60, near the town of Covington, on December 20, 1946, and it is conceded that it was the proximate result of the negligence of the defendant, Carter. The taxi was damaged and an action was instituted by the plaintiff, Hinkle, against the defendant, Smith, for $1,000, $750 of which represented damage to the taxi and $250 damages for the loss of the use of it. Judgment was recovered, the full amount paid thereon and it was marked satisfied.

Later, Hinkle instituted another action against the two named defendants seeking to recover for personal injuries received by him by reason of the collision. The defendants pleaded that the judgment and its satisfaction in the first action was a bar to Hinkle's right to bring the second action for the personal injuries. The court overruled that contention and permitted the case to go to the jury. A verdict was returned in favor of the plaintiff for the sum of $1,000, and judgment was entered, from which this writ of error was obtained.

The question involved is one of law: May one who has suffered both damage to his property and injury to his person as the result of a single wrongful act maintain two separate actions therefor, or is a judgment obtained in the first action a bar to the second? We have no Virginia decision upon the point.

The question has been presented to the courts many

times and there is a direct conflict of American authority on the subject. The majority of the American courts of last resort are of the view that but one single cause of action exists and that but one action may be brought therefor. Typical of this view is the case of *King* v. *Chicago, etc., Ry. Co.* (1900), 80 Minn. 83, 82 N. W. 1113, 81 Am. St. Rep. 238, 50 L. R. A. 161.

On the other hand a respectable and increasing minority of the courts are of the view that a single tort, resulting in damage to both person and property, gives rise to two distinct causes of action, and that, therefore, recovery in one is no bar to an action subsequently commenced for the other. The minority view is based upon the English case of *Brunsden* v. *Humphrey* (1884), L. R. 14 Q. B. D. 141.

The question we are dealing with has been the subject of serious judicial comment and controversy in America for nearly half a century. The reason for the controversy seems to be in the divergent views on the interpretation of the words, "cause of action". All of the cases hold that as a general rule a single cause of action cannot be split into several claims and separate actions maintained thereon. A few of them are *Secor* v. *Sturgis* (1880), 16 N. Y. 548; *Smelker* v. *Chicago, etc., R. Co.* (1900), 106 Wis. 135, 81 N. W. 994, and *Patnode* v. *Westenhaver* (1902), 114 Wis. 460, 90 N. W. 467. The cases on both sides of this question are legion and all of them will not be cited or discussed. They may be found in American Law Reports annotated, and the digests. See 47 A. L. R. 536; 64 A. L. R. 663; 127 A. L. R. 1081; 140 A. L. R. 1241, and 166 A. L. R. 870. See also 1 C. J. S., Actions, section 104; 1 Am. Jur., Actions, section 114, and Michie's Jur., Actions, Vol. 1, p. 107.

The Massachusetts court in *Dearden* v. *Hey,* 304 Mass. 659, 24 N. E. (2d) 644, 127 A. L. R. 1077, in reiterating its former position adopting the majority view, said that damages resulting from a single tort, even though such damages are partly property damages and partly personal injury damages, are, when suffered by one person, the subject of only one suit as against the wrongdoer, the different injuries

being merely items of damage proceeding from the same wrong.

Typical of the minority rule are the cases of *Vasu* v. *Kohlers, Inc.* (1945), 145 Ohio St. 321, 61 N. E. (2d) 707, 166 A. L. R. 855, and *Reilly* v. *Sicilian Asphalt Paving Co.,* 170 N. Y. 40, 62 N. E. 772. In the latter case, which is a leading one, the court had this to say: "The question now before us has been the subject of conflicting decisions in different jurisdictions. In England it has been held by the court of appeals (Lord Coleridge, C. J., dissenting) that damages to the person and to property, though occasioned by the same wrongful act, give rise to different causes of action (*Brunsden* v. *Humphrey*, 14 Q. B. Div. 141), while in Massachusetts, Minnesota, and Missouri the contrary doctrine has been declared (*Doran* v. *Cohen*, 147 Mass. 342, 17 N. E. 647; *King* v. *Chicago, etc., Ry. Co.*, 80 Minn. 83, 82 N. W. 1113, 81 Am. St. Rep. 238, 50 L. R. A. 161; *Von Fragstein* v. *Windler*, 2 Mo. App. 598). The argument of those courts which maintain that an injury to person and property creates but a single cause of action is that, as the defendant's wrongful act was single, the cause of action must be single, and that the different injuries occasioned by it are merely items of damage proceeding from the same wrong, while that of the English court is that the negligent act of the defendant in itself constitutes no cause of action, and becomes an actionable wrong only out of the damage which it causes. 'One wrong was done as soon as the plaintiff's enjoyment of his property was substantially interfered with. A further wrong arose as soon as the driving also caused injury to the plaintiff's person.' *Brunsden* v. *Humphrey, supra*."

The court, in that case (*Reilly* v. *Sicilian Asphalt Paving Co.*), concluded that injury to person and injury to property were essentially different and gave rise to two causes of action; that to hold that only one cause of action exists would be impractical or at least very inconvenient in the administration of justice, and that they should not be blended. The court noted that different periods of limitation applied; that the plaintiff cannot assign his right of action

for the injury to his person, while he could assign that for injury to his property; that action for injury to his person would abate or be lost by his death before a recovery; and that injury to property would be an action that would survive and might be seized by creditors or pass to an assignee in bankruptcy.

The court, in conclusion, referred to the common law in this language: " * * * the history of the common law shows that the distinction between torts to the person and torts to property has always obtained. Lord Justice Bowen, in the *Brunsden Case*, has pointed out that there is no authority in the books for the proposition that a recovery for trespass to the person is a bar to an action for trespass to goods, or vice versa. It is true that at common law the necessity of bringing two suits could, at the election of the plaintiff, be obviated in some cases, * * * . Therefore, for reason of the great difference between the rules of law applicable to injuries of the person and those relating to injuries to property, we conclude that an injury to person and one to property, though resulting from the same tortious act, constitute different causes of action."

In *Vasu* v. *Kohlers, Inc., supra*, the Ohio court, in an opinion distinguished for its thoroughness and notable for its logic and apt reasoning rendering it a leading case, adopted the minority view, and in speaking of the common law incorporated the statement from *Reilly* v. *Sicilian Asphalt Paving Co., supra*, to the effect that the history of the common law has always recognized and distinguished between torts to the person and torts to property. The court expressed the thought in this language: "A critical and analytical study of the two-causes-of-action rule will demonstrate that it is in harmony and keeping with the historical and logical development of the common law on that subject, * * * . The distinctions involved are most important because they involve not only the determination of what constitutes causes of action but the necessary relation of such causes of action to the doctrine of *res judicata*."

The right of personal security and the right of property

which are invaded by a single wrong give rise to two remedial rights, said the court, and further, in giving the reason for the rule, it said that consideration must be given to the fact that where a property right is invaded the title to the property must be shown to be in the plaintiff, whereas there is no such requirement as to personal injuries. The court then referred to the same elements of inconvenience and the same differences as those stated in *Reilly* v. *Sicilian Asphalt Paving Co., supra.*

The court further called attention to the fact that nearly all of the cases which support the single-cause-of action rule involve situations where the plaintiff brought the action in his own right to recover both his property and personal injury damages, and that the rule against splitting demands which would limit the plaintiff to a single action is based on the idea of unreasonable vexation of the defendant rather than upon a discriminating conception of a cause of action. However, when a tort-feasor has committed a tort resulting in damage to both person and property there is nothing vexatious or unreasonable in prosecuting separate actions against him.

It is important to determine whether a complaint states more than one cause of action, and to make the determination it must be ascertained whether more than one primary right has been invaded. "If two separate and distinct primary rights could be invaded by one and the same wrong, or if the single primary right should be invaded by two distinct and separate legal wrongs, in either case two causes of action would exist." Pomeroy's Code Remedies, 4 ed., page 467, section 350.

It will be observed that an argument to support the majority view is that the single-cause-of-action rule will prevent the crowding of courts with unnecessary litigation, prevent vexatious litigation, eliminate added court costs and delay, and expeditiously end litigation.

That argument is answered in *Vasu* v. *Kohlers, Inc., supra,* at page 718, where the court said: "* * * Short cuts and improvisations may be appealing, but if certainty and pre-

dictability, qualities so necessary in the law, are to be maintained, the logical and symmetrical distinctions of the substantive common law, carefully developed through the necessities of experience, should be preserved and not destroyed. In the complexity of life the combinations of fact which give rise to legal liability are infinite, and as a consequence a heavy burden is necessarily imposed upon procedural processes. Nevertheless, rights are too important and liability is too oppressive to be determined and administered in wholesale fashion. * * *"

The minority view follows a less practical but a more logical path. Each jurisdiction concerned has chosen a measuring stick regarded by it as the most important. When it is remembered that the plaintiff usually institutes an action in order to obtain compensation for damages done to his rights rather than to punish the defendant for the wrong, it would seem that the question of the number of rights invaded would be the more important one. This is the Ohio view and places Ohio on the side of a growing minority of States.

In the English case of *Brunsden* v. *Humphrey, supra,* the plaintiff brought an action to recover for damages done to his cab in a collision caused by the negligence of the defendant's servant, and after having recovered the amount claimed he brought another action against the defendant claiming damages for personal injury sustained through the same negligent act. After he obtained a verdict the court ruled in favor of the defendant on the ground that the action was not for a new wrong but for a consequence of the same wrongful act which was the subject of the former suit. On appeal the judgment was reversed and the judgment on the verdict for the plaintiff was restored. The Master of the Rolls said that the causes of action were distinct and therefore the court was not called upon to apply the doctrine of *res judicata.* It was suggested that different evidence would be required to support the respective claims for injury to property and to the person of the plaintiff, and on this point Lord Justice Bowen said, "In the one case

the identity of the man injured and the character of his injuries would be in issue, and justifications might conceivably be pleaded as to the assault, which would have nothing to do with the damage done to the goods and chattels."

In speaking of the gist of the action, Lord Justice Bowen said, "Without remounting to the Roman law, or discussing the refinements of scholastic jurisprudence and the various uses that have been made, either by judges or juridical writers, of the terms '*injuria*' and '*damnum*', it is sufficient to say that the gist of an action for negligence seems to me to be the harm to person or property negligently perpetrated. * * * Two separate kinds of injury were in fact inflicted, and two wrongs done. The mere negligent driving in itself, if accompanied by no injury to the plaintiff, was not actionable at all, for it was not a wrongful act at all till a wrong arose out of the damage which it caused. One wrong was done as soon as the plaintiff's enjoyment of his property was substantially interfered with. A further wrong arose as soon as the driving also caused injury to the plaintiff's person. Both causes of action, in one sense, may be said to be founded upon one act of the defendant's servant, but they are not on that account identical causes of action. The wrong consists in the damage done without lawful excuse, not the act of driving, which (if no damage had ensued) would have been legally unimportant."

Lord Chief Justice Coleridge dissented, taking the other view. He said: "It appears to me that whether the negligence of the servant or the impact of the vehicle which the servant drove, be the technical cause of action, equally the cause of action is one and the same; that the injury done to the plaintiff is injury done to him at one and the same moment by one and the same act in respect to different rights, i.e., his person and his goods, I do not in the least deny; but it seems to me a subtlety not warranted by law to hold that a man cannot bring two actions, if he is injured in his arm and in his leg, but can bring two, if besides his arm and leg being injured, his trousers which contain his leg,

and his coatsleeve which contains his arm, have been torn."

This case does not hold that it would have been improper to join the two causes of action in one, subject to certain exceptions not important here. The English rule permits a plaintiff to unite in the same action several causes of action, but he is not compelled to do so.

The weight of American authority, as we have previously stated, disagrees with the decision in *Brunsden* v. *Humphrey*, but we believe that the principles announced in that case, upon which the minority rule is founded, are more logical and better suited to our practice in Virginia.

It is contended by the defendant in error that the English decision of *Brunsden* v. *Humphrey, supra,* is declaratory of the common law of England and is binding upon this court, citing section 2 of the Code of Virginia. This section provides: "The common law of England, so far as it is not repugnant to the principles of the Bill of Rights and Constitution of this State, shall continue in full force within the same, and be the rule of decision, except in those respects wherein it is or shall be altered by the General Assembly."

The history of this provision will be found in *Foster* v. *Commonwealth*, 96 Va. 306, 31 S. E. 503, 70 Am. St. Rep. 846, 42 L. R. A. 589. There it is said that the convention of May, 1776, which declared our separation from England, first brought in substantially what is now section 2 of the Code. Each Code of Virginia from that time has contained, in substance, the provision that is now section 2.

Speaking of actions *ex delicto*, the trial court, in its able opinion, had this to say: "Under the common law practice, in actions *ex delicto*, several different causes, each of which were enforceable by the same form of action could be joined. * * *

"Such is the practice now in Virginia by virtue of section 6086 of the Code. The practice of joining distinct causes of action in a single pleading is of common law origin. It has been the policy of the law to permit and encourage joinder of actions that are of the same nature and to be pursued in the same form of action in order to reduce litigation,

the costs and for the convenience of the defendant. But it is to be noticed that the common law practice does not require the plaintiff to join such actions. It provides that he may do so. In Burks, Pleading and Practice, 2nd edition, page 141, that eminent authority on common law pleading says: 'The general doctrine is that demands may be joined when they are of the same nature, and the same judgment is to be given in all, notwithstanding the pleas may be different.'

"And on page 915 he has this to say: 'Several actions of tort may be joined in the same action of trespass, * * * but in Virginia it is declared by statute that wherever trespass would lie case may be brought. * * * It may also be observed that where the causes of action might have been united in a single action, but the plaintiff has brought several actions, he may be compelled to consolidate them, and to pay the extra cost.' "

No doubt at common law a person injured in both his person and his property through the same negligent act of a defendant could join both claims for damages in the same action but he did not have to do so. (For the distinction between trespass and case see Burks Pleading and Practice 3rd ed., p. 242.) The trial court, in concluding upon this point, wrote in his opinion as follows: "While the fine distinction between trespass and case is not material to the issue in the case at bar, I have gone into detail for the purpose only of showing that at common law two separate causes of action were recognized by the jurists and legal authorities. If they existed at common law they exist today unless changed by statute. Section 2, Code of Virginia, *Foster* v. *Commonwealth, supra.* The legislature which is specially charged with the duty of making or amending the laws to meet their needs, has not at any time enacted any law changing the rule of the common law with respect to the matter under consideration. The presumption from the inaction of the legislature is that it has not found that the condition of the present practice requires any change or

modification of the rule. See *Foster* v. *Commonwealth, supra.*"

At common law trespass could not be united with case. See Burks Pleading and Practice, 3rd ed., 893. Common law pleading still prevails in Virginia, and a plaintiff, if he desires, may bring an action of trespass or case, or under section 6086 of the Code wherever trespass will lie case may be brought. Burks Pleading and Practice, 3rd ed., p. 893.

Our conclusion is to align Virginia with the minority view because we think it more logical and better adapted to our conditions. We have many similar cases arising almost daily from the consequences of injury to person and property from the same wrong following automobile accidents. Questions involving the rights of automobile insurance carriers, both liability and collision, rights of assignees, receivers, trustees in bankruptcy, and subrogees, render it essential in certain cases to allow one action for personal injury and another for property damage. In addition, in the background is the fact that in Virginia we still have as a part of our law, the common law, including common law pleading and practice. Under that system, originally, two actions could have been maintained and still can be maintained today because the General Assembly has not, in its wisdom, seen fit to change or alter the common law in that respect. Under section 2 of the Code the common law touching this subject remains the law of Virginia.

The judgment is affirmed.

*Affirmed.*

EGGLESTON, J., dissenting.

I am of opinion that this court should adopt the rule that a single cause of action arises from a tort, and that injuries to person and property are merely items of damage proceeding from the same wrong. This is the view taken by a majority of the courts throughout the country, and so far

as I am advised has heretofore been generally adopted and applied in the trial courts of this State.

This rule, which requires a plaintiff to assert in a single action his claim for compensation for personal injuries and property damage, works no hardship on him and is in keeping with the modern trend to avoid a multiplicity of actions and the incident delay and expense. The contrary rule, now adopted by the majority of this court, is an invitation to a plaintiff to prolong the litigation and to harass a defendant with a number of suits by making each element of damage a separate cause of action. This, I think, is a step in the wrong direction.

HUDGINS, C. J., concurs in this dissent.