John E. McGREEVY, Plaintiff,

v.

RACAL–DANA INSTRUMENTS, INC.
and Gordon Taylor and Brian G.
Hull, Defendants.

Civ. A. No. 88–0300–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 8, 1988.

Alfred S. Bryant, Thomas E. McCabe, Washington, D.C., for plaintiff.

Kenneth B. Weckstein, Epstein Becker & Green, P.C., Alexandria, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is essentially an employment contract dispute. It presents the question, unsettled in this jurisdiction, whether there exists an "employer intentional tort exception" to the exclusivity provision of the Virginia Worker's Compensation Act (WCA).[1] Given that the WCA is modeled after the Indiana Act and that the courts of that state, for manifestly sound reasons, have adopted such an exception, this Court does so here. Thus where an employer commits an intentional tort *with the intent to injure* an employee, this Court concludes that an action by that employee is not barred by the WCA.

## FACTS

Plaintiff, John McGreevy, brings this suit asserting, *inter alia,* a claim of intentional infliction of emotional distress against his former employer, defendant Racal–Dana, and its corporate officers, defendants Taylor and Hull. While motions have targeted other counts of the Complaint,[2] only the

---

1. The exclusivity provision in Va.Code Ann. § 65.1–40 is as follows:

    Employee's rights under Act exclude all others.—The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death.

2. Plaintiff's Complaint asserted seven counts: wrongful termination of employment (Count I); breach of duty of good faith and fair dealing with respect to plaintiff's employment contract (Count II); wrongful withholding of compensation (Count III); intentional and negligent infliction of emotional distress (Count IV); punitive damages claim for fraud (Count V); violation of the Consolidated Omnibus Budget Reconciliation Act (COBRA) by denying plaintiff the opportunity to purchase and continue his group health insurance coverage, *see* 26 U.S.C. § 162(k) (Count VI); and a RICO claim (Count VII). The Court dismissed Counts I and II, holding that the employment contract was governed by Virginia law and hence terminable at will because it was silent as to a term. *See*

claim of intentional infliction of emotional distress raises the WCA issue. Accordingly, this Memorandum Opinion focuses only on that count of the Complaint.

In April 1982, Racal–Dana, a California corporation, employed plaintiff to promote and sell Racal–Dana's products to the Department of Defense and its prime contractors. Plaintiff worked on a commission basis. Plaintiff alleges he generated so much business that defendants Hull and Taylor became "jealous" of plaintiff's income and "manipulated" plaintiff's sales results to deprive plaintiff of his sales commissions. First Amended Complaint at ¶ 22. With respect to plaintiff's claim of intentional infliction of emotional distress, he alleges that defendants intentionally and maliciously threatened, embarrassed, slandered and "blacklisted" plaintiff and published a report to the Virginia State Employment Commission stating that plaintiff was terminated for "willful misconduct." First Amended Complaint at ¶¶ 28, 33.

Defendant Racal–Dana moves to dismiss plaintiff's claim of intentional infliction of emotional distress for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., asserting that plaintiff's claim is barred by the exclusivity provision of the WCA. For the reasons set forth, Racal–Dana's motion is denied.

## ANALYSIS

█ The Court holds that plaintiff's claim for intentional infliction of emotional distress against defendants is not barred by the exclusivity provision of the WCA because defendants' acts, as alleged, were committed with the intent to injure plaintiff, and therefore cannot properly be described as "accidents."

*Norfolk Southern Railway Co. v. Harris,* 190 Va. 966, 59 S.E.2d 110 (1950). Therefore plaintiff's claims for wrongful termination and breach of a duty of good faith and fair dealing failed to state claims upon which relief could be granted. The Court also dismissed plaintiff's claim for negligent infliction of emotional distress, holding that such a cause of action is not recognized in Virginia. *See Pennsylvania Life Insurance*

In order for the exclusivity provision of Virginia's WCA to bar plaintiff's tort claims against his employer, his injury (i) must have arisen *in the course of* his employment, (ii) must have arisen *out of* his employment, and (iii) must have been an injury by *accident.* Va.Code Ann. § 65.1–7, –40 (Repl. Vol. 1987). Here, it is not seriously disputed that plaintiff's alleged injury arose out of and in the course of his employment. An injury arises out of the employment when the injury can be fairly traced to the employment as at least a contributing cause. *Conner v. Bragg,* 203 Va. 204, 208–09, 123 S.E.2d 393, 396–97 (1962). An injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be in connection with the employment, and while he is reasonably fulfilling his employment duties. *Conner,* 203 Va. at 208, 123 S.E.2d at 396. These criteria are plainly met here; plaintiff's alleged injury is easily traced to his employment and it certainly occurred in the course of his employment. *See Haigh v. Matsushita Electric Corp.,* 676 F.Supp. 1332, 1353 (E.D.Va.1987) (alleged intentional infliction of emotional distress as a result of job transfer and termination was injury arising out of and in the course of employment). The first two prongs of the exclusivity bar have therefore been met in the instant case. The issue thus becomes whether defendant's alleged intentional tort can be considered an "accident."

The Virginia Supreme Court has defined "accident" as "an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens." *Big Jack Overall Co. v. Bray,* 161 Va. 446, 447, 171 S.E. 686, 687 (1933) (quoting *Vance on Insurance* ), *cited in*

*Co. v. Bumbrey,* 665 F.Supp. 1190 (E.D.Va.1987). Finally, the Court dismissed plaintiff's RICO count for failure to allege any "pattern of racketeering activity." *See Walk v. Baltimore & Ohio R.R.,* 847 F.2d 1100 (4th Cir.1988); *Flip Mortgage Corp. v. McElhone,* 841 F.2d 531 (4th Cir. 1988); *HMK Corp. v. Walsey,* 828 F.2d 1071 (4th Cir.1987).

*Haigh v. Matsushita Electric Corp.*, 676 F.Supp. 1332, 1353 (E.D.Va.1987).[3] In addition, Virginia recognizes, as do other states, that an assault by a coemployee or third person may be considered an "accident." *See Continental Life Insurance v. Gough,* 161 Va. 755, 172 S.E. 264 (1934). Although defining an intentional tort as an accident seems contrary to common sense, this problem "was overcome by the simple expedient of viewing the affair from the point of view of the victim rather than of the assailant, since from the victim's point of view the assault was an unexpected and untoward mishap." 2A Larson, *Workmen's Compensation* § 68.12. Here, defendant urges the Court to apply the traditional definition of accident and hold that its alleged acts, although intentional, were accidental under the WCA. This position has the appeal of simplicity and is not without support. *See Haigh,* 676 F.Supp. at 1353 (events resulting in employee's emotional distress were accidental where they occurred through human agency and were not expected by the person to whom it happened). Ultimately, however, policy, principle, and precedent point persuasively, if not conclusively, in the opposite direction.

Professor Larson, a noted scholar and author in the field of worker's compensation, suggests that in determining whether an incident was an "accident," the incident should be viewed from the perspective of the person seeking the protection of the act. In some instances, therefore, the proper perspective is that of the employer. "When the employee seeks to recover benefits, the question is whether the injury was an accident from the employee's perspective; if the employer seeks to impose the accident requirement as a defense, the question is whether the injury was an accident from the employer's perspective." *Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882, 888 (1986) (citing 2A Larson, *Workmen's Compensation* § 68.12)). Accordingly, where the incident arrives in court not as a compensation claim, but as a damage suit against an employer-assailant, then "it is the employer who must affirmatively plead the exclusiveness of the act as a defense. To do this he must allege that the injury was an accident—and how can he do this, when he himself has deliberately produced it?" 2A Larson, *Workmen's Compensation* § 68.12.

The result of Larson's cogent analysis has been the adoption by numerous courts of the "intentional tort" exception to worker's compensation exclusivity provisions.[4] Significantly, Indiana courts are among this group. This is significant because, as is well recognized, Virginia's WCA is mod-

---

**3.** Two concepts are generally recognized and discussed when interpreting the "by accident" concept in Virginia.

These concepts are a required degree of "unexpectedness" in the accident or injury, and a requirement of time specificity as to the occurrence of the accident or incident giving rise to the injury. The terms "accident" or "injury" are not synonymous. The term "accident" refers to the incident or precipitating event (the cause) that occurred at work which resulted in an "injury" (the effect).

L. Pascal, *Virginia Worker's Compensation Law: Law and Practice* 27–28 (1986), *quoted in Haigh v. Matsushita Electric Corp.,* 676 F.Supp. 1332, 1353 (E.D.Va.1987).

**4.** *See, e.g., Austin v. Johns–Manville Sales Corp.,* 508 F.Supp. 313 (D.Me.1981) (interpreting Maine workers' compensation law); *Jablonski v. Multack,* 63 Ill.App.3d 908, 20 Ill.Dec. 715, 380 N.E.2d 924 (1978); *National Can Corp. v. Jovanovich,* 503 N.E.2d 1224 (Ind.App.1987); *Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882 (1986); *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E.2d 244 (1985); *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), *superseded by statute as stated in Ginther v. Jeno's, Inc.,* [available on WESTLAW, 1988 WL 17204] 1988 Ohio App. LEXIS 469 (Feb. 19, 1988). *See generally* Petralamo, *Employer Total Liability* at p. 167, 1986 ABA National Institute on Workers' Compensation ("In most states, common-law suits alleging that the employer has 'intentionally' inflicted an injury or illness upon plaintiff employees will not be barred by the exclusivity principle."); Herrold, *Challenging the Exclusivity of the Workers' Compensation Remedy—The Ohio Experience* at p. 138, 1986 ABA National Institute on Workers' Compensation ("A majority of courts have held that an employer who deliberately harms his employee is not shielded from liability by the exclusivity of the particular jurisdiction's workers' compensation remedy."). Both the Petralamo and Herrold article are cited in *Beauchamp,* 398 N.W.2d at 899 n. 42.

eled after the Indiana Act "so that the construction placed upon the Indiana law by the Courts of that state merits our consideration." *Barksdale v. H.O. Engen, Inc.,* 218 Va. 496, 498, 237 S.E.2d 794, 796 (1977). This Court is thus persuaded that Virginia would follow Professor Larson's reasoning and Indiana's lead and adopt such an exception.

Sound policy reasons support this result. The justification for making workers' compensation an exclusive remedy is a trade-off: the employee gives up the right to sue the employer in tort in exchange for the employer's abandonment of the defenses of contributory negligence and assumption of risk. Yet here, if plaintiff is relegated to his workers' compensation remedy, he will be deprived of his tort remedy without receiving any concomitant benefit. *See Tolbert v. Martin Marietta Corp.,* 621 F.Supp. 1099, 1103 (D.Colo.1985) ("if [plaintiff] is relegated to her worker's compensation remedy [in intentional tort cases], she will be deprived of her tort remedy without receiving any off-setting benefits"); *see also Jablonski v. Multack,* 63 Ill.App.3d 908, 20 Ill.Dec. 715, 380 N.E.2d 924 (1978) (applying intentional tort exception to acts of co-employee, thus WCA not a bar to a common-law action for damages by a fellow worker). Thus, the underlying rationale of the WCA is inapplicable to this plaintiff's claim of intentional infliction of emotional distress.

The Court recognizes that its decision here is in conflict with that of Judge Spencer in *Haigh v. Matsushita Electric Corp.,* 676 F.Supp. 1332 (E.D.Va.1987). There, plaintiff brought a Title VII age discrimination and state tort law suit against his former employer asserting, *inter alia,* a claim for intentional infliction of emotional distress arising from the employer's alleged blacklisting and slandering plaintiff and subjecting him to humiliation, embarrassment, and mental anguish. Judge Spencer dismissed plaintiff's emotional distress claim, holding that Virginia's WCA provided the exclusive remedy. Judge Spencer stated that "it is quite conceivable and possible" that the Virginia Supreme Court would recognize the intentional tort

exception, but found it more probable that it would not because the Virginia General Assembly knew of the exception from other jurisdictions but did not act to recognize it. 676 F.Supp. at 1354. Judge Spencer also found that the creation of the exception "is a monumental step, and not one to be taken lightly. The Act is a result of a compromise between employers and employees, and as such, the creation or recognition of an exception to the general rules of the Act must only be undertaken with an eye toward that compromise and the underlying purposes of the Act." 676 F.Supp. at 1354.

The Court agrees with Judge Spencer that the recognition of any exception must only be undertaken in light of the policies and purposes of the WCA. The Court, however, disagrees with the remainder of Judge Spencer's analysis. As noted by Judge Spencer, the Virginia Supreme Court has written:

> [The Worker's Compensation Law] places upon industry as an expense of the business the pecuniary loss, measured by the compensation provided in the statute, attendant upon all accidents to employees within the hazards of the industry. It extends the employer's liability to all accidental personal injuries "arising out of and in the course of the employment," the expense of which is added to the cost of production. The employer surrenders his right of defense on the ground of contributory negligence and the common law doctrines of the assumption of risk and fellow servants. The rules of evidence are relaxed. The employee surrenders his right to a trial by jury and agrees to accept an arbitrary amount fixed by statute in lieu of compensation for the injuries sustained. He gains a wider security. The issue of negligence or nonnegligence of the employer and the fellow servants is eliminated. Long, costly and delayed litigation is avoided. A smaller but speedier recovery is guaranteed.

*Feitig v. Chalkley,* 185 Va. 96, 98, 38 S.E. 2d 73, 73–74 (1946), *quoted in Haigh,* 676 F.Supp. at 1354. This language in *Feitig*

supports the Court's holding in this case. As discussed, the exclusivity provision is the result of a trade-off. In a negligence context, the policies and purposes of the WCA are met. "The issue of *negligence or nonnegligence* of the employer ... is eliminated." *Feitig*, 38 S.E.2d at 74 (emphasis added). However, in the intentional tort context, there is no "trade-off," and an employee is deprived of his tort remedy without any concomitant benefit. Moreover, to hold otherwise would permit an employer to use the WCA exclusivity provision as a shield for his deliberate, tortious acts and thereby commit such acts with some impunity. *See Jablonski*, 380 N.E.2d at 928 ("the socially beneficial purpose of the [WCA] was not meant to permit a person who commits an intentional tort to use the compensation law as a shield against liability"); *National Can Corp.*, 503 N.E.2d at 1232 ("Public policy reinforces [the intentional tort exception] since it would be a total perversion of the humanitarian purposes of the Act to permit an employer to use the Act as a shelter against liability for an intentional tort."). This result is flatly contrary to the public policy goals of the WCA. Indeed, in certain instances, there would be no remedy at all for an injured employee. For example, "an employer ... who intentionally disfigures an employee without affecting the employee's ability to work would not be subject to liability under the [WCA] or, under [defendant's] analysis, subject to civil suit." *Beauchamp*, 398 N.W.2d at 889. Clearly, this result cannot be within the intention or purpose of Virginia's WCA. Yet a failure to adopt the intentional tort exception permits precisely these results.

In addition to the sound policy reasons supporting the adoption of the intentional tort exception, there is Fourth Circuit *dictum* suggesting that the Virginia Supreme Court, given the opportunity, would adopt such an exception. In *Joyce v. A.C. & S., Inc.*, 785 F.2d 1200 (4th Cir.1986), an employee brought suit against his employer for damages allegedly resulting from exposure to asbestos in the workplace. The employee claimed that his employer intentionally failed to warn him of, or alleviate, the danger of asbestos exposure. Faced with the WCA exclusive remedy bar, the employee argued that intentional torts are outside the scope of the WCA. Recognizing that Virginia has not yet adopted the intentional tort exception, the *Joyce* court looked to Indiana decisions for guidance, as the Virginia WCA was modeled after the Indiana WCA. *See Barksdale v. H.O. Engen, Inc.*, 218 Va. 496, 498, 237 S.E.2d 794, 796 (1977) ("The Virginia Workmen's Compensation Act is based upon the Indiana statute, so that the construction placed upon the Indiana law by the courts of that state merits our consideration."). Indiana has adopted the majority rule that recovery for intentional acts which are designed to injure the employee is not barred by the WCA. In the final analysis, however, the Fourth Circuit did not need to reach the issue of the intentional tort exception because the employee in *Joyce* failed to allege an intent to injure by the employer. Notably, though, the court wrote:

> The Virginia Workers' Compensation Act was modeled after the analogous statute in Indiana. Virginia courts have therefore considered decisions interpreting the Indiana Act in construing the substantially similar statute in Virginia. Indiana has adopted the majority rule limiting the intentional tort exception to conduct by an employer intended to injure the employee. Intentional acts which merely cause, but are not designed to produce, an injury, are within the coverage of the Act.

785 F.2d at 1207. The *Joyce* court therefore concluded that the Indiana rule, requiring an intent to injure, "would likely be followed by the Supreme Court of Virginia in the event it decides to adopt an intentional tort exception to its Workers' Compensation Act." 785 F.2d at 1207. Although *Joyce* arguably revolved around the *type* of intentional tort exception Virginia would adopt, *i.e.*, one requiring a specific intent to injure,[5] the *Joyce* rationale is equally appli-

---

5. Under Indiana law, it must be proven that the employer had an actual intent to cause the complained of injury. *See Cunningham v. Aluminum Co. of America, Inc.*, 417 N.E.2d 1186,

cable in determining whether Virginia would adopt *any* intentional tort exception.

Defendant, however, points to a recent amendment to Virginia's WCA in support of its argument that the WCA bars plaintiff's claim. Effective July 1, 1988, Va. Code Ann. § 65.1–23.1 will be amended to read as follows:

> Notwithstanding the provisions of this Act, an employee who is sexually assaulted and can identify the attacker may elect to pursue an action-at-law against the attacker, even if the attacker is the assaulted employee's employer or co-employee, for full damages resulting from such assault in lieu of pursuing benefits under this Act, and upon repayment of any benefits received under the Act.

Defendant Racal–Dana invites the Court to draw the inference that the passage of this provision confirms that there is no intentional tort exception to the WCA outside the context of sexual assaults. This argument is far from insubstantial. Indeed, the argument is powerful if one assumes that the General Assembly in fact considered whether to adopt a broad intentional tort exception and rejected this option in favor of a narrow sexual assault exception. No such assumption seems warranted here. No legislative history exists to support it. More likely, the issue of a general intentional tort exception was not considered; the passage of the narrow sexual assault provision reflects not that the whole intentional tort/WCA matter was considered, but that the issue of sexual assault in the workplace is now receiving substantial public attention. It may also reflect a legislative desire to clarify that the preexisting statute, now subsection (A), did not foreclose a common-law remedy. Subsection (A) provides that an employee sexually assaulted in the course of employment would, under certain circumstances, be deemed to have received an injury arising out of the employment and therefore be eligible for compensation benefits. Subsection (B) can be viewed as merely clarifying that subsection (A) was not intended to foreclose a tort remedy that would be available under the majority rule excepting intentional torts from the WCA exclusivity provisions. Thus, the inference defendant invites this Court to draw from the recent enactment of section 65.1–23.1 is ultimately unpersuasive.

This conclusion finds compelling support in the anomalous results that would follow if the Court were to hold as defendant contends. To accept defendant's analysis on this point would lead to these ludicrous results: an employer could be held personally liable in tort for pinching or squeezing, but not for punching an employee in the nose or hitting him on the head with a two-by-four. Worse yet, failure to adopt an intentional tort exception would mean that the General Assembly intended that an employee whose face was disfigured by an employer's intentional tort be deprived of a remedy, that an employee deliberately assaulted physically by an employer be limited to workers' compensation, but that an employee pinched or fondled sexually be permitted the full range of tort and compensation remedies against the employer. This Court declines to impute to the Virginia General Assembly the intent to achieve such anomalous results. For all these reasons, the Court believes the Virginia Supreme Court would, given the opportunity, adopt the intentional tort exception described and applied here.

An appropriate Order will enter.

---

1190 (Ind.App.1981) (intentional acts which merely cause, but are not designed to produce, an injury, are within the coverage of the WCA). "In light of the *quid pro quo* underlying [the WCA], we believe a stringent standard of specific intent is necessary to avoid the workmen's compensation scheme being 'swallowed up' by a glut of common law suits outside the Act. Such a result is inconsistent with the legislative purpose underlying the [WCA]." *National Can Corp. v. Jovanovich,* 503 N.E.2d 1224, 1233 (Ind. App.1987).