## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Lorine Spence

v.

E.S.I.S., Inc.

December 22, 1989

Case No. (Law) CL88-2927

By JUDGE KENNETH N. WHITEHURST, JR.

On March 9, 1981, the Industrial Commission of Virginia granted an award of $118.01 per week to Lorine Spence, plaintiff, for injuries sustained while in the employ of ESIS, Inc., defendant. On May 22, 1981, the award was both reviewed and affirmed by the full Industrial Commission in Richmond, Virginia. Spence alleges that ESIS has subsequently (1) failed to make the required payments, (2) made late payments, (3) failed to make full payment, and (4) failed to make adjustments to payments. The plaintiff also contends that ESIS filed frivolous hearings, actions, and appeals.

ESIS filed a demurrer to the motion for judgment claiming that:

(1) Spence's exclusive remedy is before the Industrial Commission of Virginia, pursuant to the Virginia Workers' Compensation Act;

(2) Spence's allegations are insufficient to state

a claim for negligent infliction of emotional distress, and

(3) Spence's allegations are insufficient to state a cause of action against ESIS for punitive damages.

The defendant's demurrer is sustained, and the case is dismissed with prejudice.

The initial issue before the court is whether Virginia Code § 65.1-100.1 grants the Industrial Commissioner either exclusive or concurrent jurisdiction over the instant matter. Section 65.1-100.1 states that:

> [o]rders or awards of the Commission may be recorded, enforced, and satisfied as orders or decrees of a circuit court upon certification of such order or award by the Commission. The Commission shall certify such order or award upon satisfactory evidence of noncompliance with the same.

The plaintiff notes that "the General Assembly's intention to grant concurrent jurisdiction and equal powers of enforcement is clear." *Memorandum in Response to Defendant's Memorandum of Law and in Support of Plaintiff's Motion to Overrule Defendant's Demurrer*, p. 5.

The defendant, however, contends that it is not so much a question of jurisdiction as it is of fulfilling statutory requirements. The defendant contends:

> that Spence is attempting to circumvent the jurisdiction of the Industrial Commission by going directly to the Circuit Court without satisfying § 65.1-100.1's requirement that she first convince the Industrial Commission that ESIS has not complied with the award. Without such evidence of noncompliance, the Industrial Commission should not certify the award to the Circuit Court for enforcement. *Reply Memorandum in Support of Defendant's Demurrer*, p. 5.

In *Hudock v. Industrial Commission*, furthermore, the court noted that "while the language of this code section [65.1-100.1] is permissive and provides that a

party may enforce an award in court, it must be read and considered *in pari materia* with the Commission's power pursuant to Code § 65.1-20 to punish for disobedience of its orders." *Hudock v. Industrial Commission*, 1 Va. App. 474, 482 (1986).

Although the plaintiff is correct in noting that this court has concurrent jurisdiction to hear the instant matter, certification by the Industrial Commission appears to be a prerequisite. Section 65.1-100.1 states that the orders or awards of the Commission can be enforced and satisfied as circuit court decrees *upon certification* of same. The Industrial Commission has not certified the instant matter.

The Court in *Hudock*, furthermore, concluded that both §§ 65.1-20 and 65.1-100.1 should be construed together (*in pari materia*). In giving the Industrial Commission contempt powers, it appears to have been the General Assembly's intent to give the Commission a method to enforce their directives. Should the parties disobey the Commission's orders, however, then the matter could be "certified" to circuit court. Although § 65.1-100.1 is jurisdictionally permissive, the requirement for such certification is not. The defendant's demurrer is therefore sustained.

To save both the attorneys and the court from superfluous additional litigation, the court now turns to the rest of the defendant's allegations on demurrer. The rather complex question presented by the instant case is whether an intentional tort exception to the workers' compensation exclusivity rule exists in Virginia. Virginia Code Section 65.1-40 provides the following exclusivity provision of the Workers' Compensation Act:

> The right and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death.

A central question to the above exclusivity section is what is considered an "accident." Or, to rephrase in terms of the current analysis, can an intentional act ever be considered an accident for purposes of the Workers' Compensation Act. In *Joyce v. A. C. and S., Inc.*, the court notes that "the basis of an intentional tort exception to workers' compensation exclusivity rules, recognized in many states, is the statutory language, also widely employed, in which application of an Act is limited to 'injury by accident'." *Joyce v. A. C. and S., Inc.*, 785 F.2d 1200, 1206 (4th Cir. 1986). The court continues, however, that "in Virginia . . . the Act also covers, in addition to injuries by accident, 'occupational disease'." *Id.* at 1206.

Virginia, furthermore, modeled its Workers' Compensation Act after the analogous statute in Indiana. *Id.* at 1207. The Indiana courts "have adopted the majority rule limiting the intentional tort exception to conduct by an employer intended to injure the employee. Intentional acts which merely cause, but are not designed to produce, an injury, [sic] are within the coverage of the Act." *Id.* The *Joyce* court quotes the following from Larson's *Workmen's Compensation Law*, § 68.13 (1983):

> "the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." More specifically, even conduct that includes such elements as "knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job . . . or even willfully and unlawfully violating a safety statute . . . still falls short of the kind of actual intention to injure that robs the injury of accidental character." *Id.* at 1207.

The court concluded that Joyce's complaint fell short of alleging intentional conduct which would remove

his claim from the ambit of the Workers' Compensation Act. *Id.*

In *Haigh v. Matsushita Elec. Corp. of America,* 676 F. Supp. 1332 (E.D. Va. 1987), the court was faced with a similar Workers' Compensation intentional exception issue. Richard Haigh, plaintiff, was employed by defendant, Matsushita Electric Corporation of America, from October 17, 1974, through January 27, 1987. *Id.* at 1336. He is fifty-seven years old and Jewish. Haigh claims that during his tenure as a salesman for Panasonic, two of his accounts, Best Products and Circuit City, skyrocketed. During December of 1986, however, the accounts were taken away from him. *Id.* Haigh further claims that he was told that his salary and earnable bonuses would be cut and that he would be reassigned from Richmond to western Virginia. In a letter dated January 27, 1987, Haigh stated that Panasonic had constructively terminated his employment. *Id.* Haigh's second amended complaint contained sixteen counts. *Id.*

The plaintiff, in count thirteen, "alleges that the defendants, by intentionally violating Haigh's rights under the ADEA, ERISA, Title VII, 42 U.S.C. §§ 1981 and 1985, and Virginia Code § 18.2-499, and by blacklisting and slandering him, have subjected him to humiliation, embarrassment, mental anguish, and severe emotional distress. Moreover, Norma Haigh alleges that the defendants knew or should have known the effect their actions would have on her, and thus are also guilty of intentionally inflicting emotional distress on her and are responsible for her loss of consortium." *Id.* at 1352.

The defendants, however, contend that:

(a) the Virginia Workers' Compensation Act precludes Haigh from recovering for emotional distress;

(b) Haigh fails to state a claim for emotional distress;

(c) Norma Haigh fails to state a claim for emotional distress; and

(d) no claim for emotional distress has been stated against the individual defendants. *Id.*

The court presents a pyramidal analysis on the Workers' Compensation intentional tort exception issue beginning with Virginia Code § 65.1-40, the Virginia Workers' Compensation exclusivity provision mentioned above. The "personal injury" language of § 65.1-40 is defined in Virginia Code

Section 65.1-7 as "only injury by accident, or occupational disease as hereinafter defined, arising out of and in the course of the employment and does not include a disease in any form, except when it results naturally and unavoidably from either of the foregoing causes." *Id.*

In next defining the term "accident," the court notes that "two concepts are generally recognized and discussed when interpreting the 'by accident' concept in Virginia. These concepts are a required degree of 'unexpectedness' in the accident or injury, and a requirement of time specificity as to the occurrence of the accident or incident giving rise to the injury." *Id.* at 1353. An accident, furthermore, "occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling his duties of employment." *Id.* The *Haigh* court therefore determined that the exclusivity provision of Virginia Code § 65.1-40 had been triggered since all of the statutory provisions were met. *Id.*

The court also notes that as Virginia law currently stands, intentional acts of third persons or co-employees come within the jurisdiction of the Industrial Commission. *Id.* at 1354. Ultimately, though, the court states that "it is quite conceivable and possible that the Virginia Supreme Court, when presented with this question [intentional tort exception to the Virginia Workers' Compensation exclusivity provision] will recognize, as Indiana has, the intentional tort exception. It is, however, in this court's estimation, more probable that it will not." *Id.* The court bases its conclusion on the inaction of the Virginia General Assembly to recognize such an exception. Judge Spencer, who authored the opinion, noted that the "inaction sends a message to this court, and the message is that members of the General Assembly have not, at least as yet, deemed it advisable to jump on the majority rule bandwagon." *Id.*

Judge Ellis in *McGreevy v. Racal-Dana Instruments, Inc.* noted, however, that although "the court agrees with Judge Spencer that the recognition of any exception must only be undertaken in light of the policies and purposes of the WCA . . . the Court . . . disagrees with the remainder of Judge Spencer's analysis." *McGreevy v. Racal-Dana Instruments, Inc.*, 690 F. Supp. 468, 471 (E.D. Va. 1988).

The *McGreevy* court agreed that the exclusivity provision in negligence actions is the result of a trade-off. *Id.* at 472. In an "intentional tort context [however] there is no 'trade-off' and an employee is deprived of his tort remedy without any concomitant benefit . . . to hold otherwise would permit an employer to use the WCA exclusivity provision as a shield for his deliberate, tortious acts and thereby commit such acts with impunity . . . . This result is flatly contrary to the public policy goals of the WCA." *Id.* The court concludes that "the Virginia Supreme Court would, given the opportunity, adopt the intentional tort exception described and applied here." *Id.* at 473.

Assuming for the moment that Judge Ellis is correct and that Virginia will ultimately adopt a workers' compensation intentional tort exception modeled after the Indiana Act, the question then before this court is whether the employer's actions not merely "caused but were designed to produce the complained of injury." *Id.* at 472. The failure to timely pay Mrs. Spence's benefits and the filing of hearings, actions, and appeals, though, does not rise to the level of an intentional act which would place plaintiff's suit outside of the Workers' Compensation Act. As mentioned above, furthermore, the *Joyce* court reflected that the employer's common law liability would not include either "gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence" or "breach of statute." 785 F.2d at 1207. There does not, furthermore, appear to have been conduct by the employer amounting to "genuine intentional injury." *Id.* Even if the Virginia Supreme Court adopted the Indiana intentional tort exception, Spence's cause of action would remain under the Workers' Compensation Act.

Using a *Haigh* type pyramidal structure, a narrower question that could effectively render moot the above discussion is whether, in any event, an emotional distress cause of action exists at all. In *Womack v. Eldridge*, the Virginia Supreme Court contends that a cause of action will lie for emotional distress, unaccompanied by physical injury, if the following four elements exist:

1. The wrongdoer's conduct was intentional or reckless.

2. The conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.

3. There was a casual connection between the wrongdoer's conduct and the emotional distress.

4. The emotional distress was severe.

*Womack v. Eldridge*, 215 Va. 338, 342 (1974).

At a minimum, the plaintiff's motion for judgment does not allege conduct that is "outrageous and intolerable in that it offends against generally accepted standards of decency and morality." ESIS's failure to make payments and subsequent filing of court actions and appeals questioning liability simply does not equate with the extreme and outrageous conduct necessary for an emotional distress claim without accompanying physical injury described in *Womack*. In *Johnson v. McKee Baking Company*, furthermore, the court notes that "as plaintiff's case fails to pass one phase of the *Womack* test, the Court need not look to the others." *Johnson v. McKee Baking Co.*, 398 F. Supp. 201, 209 (W.D. Va. 1975). Spence does not have, therefore, an emotional distress cause of action.

The final issue before the court is whether Spence may assert a claim for punitive damages. In *Kamlar Corp. v. Haley*, the Virginia Supreme Court noted the following analysis of the matter by the trial court:

> This case went to the jury as to Kamlar on the question of whether Kamlar breached its employment contract with the Plaintiff and, if so, whether that breach was committed maliciously or in willful or reckless disregard of Haley's rights. There was abundant evidence to support both contentions. The evidence, taken in the light most favorable to Haley, showed that Kamlar's principal officers were dissatisfied with Haley's performance at the plant, that they accepted without question a document defamatory to Haley, that they failed even after requested to review the documents governing Kamlar's purchase from Haley, and that they denied Haley a chance to explain. This amply supports the inference that Kamlar's officers seized on the occasion of Arbogast's complaint as a pretext for getting rid of Haley. *Kamlar Corp. v. Haley*, 224 Va. 699, 704 (1983).

The court stated that "the dispositive question, then, is whether a bad motive, underlying a breach of contract, in the absence of an independent, willful tort, will support an award of punitive damages." As this court concludes in the current matter that Spence does not have an emotional distress claim, the question is also appropriate to the instant case. The court argues that tort damages are awarded both to compensate the plaintiff and protect "the broad interests of social policy." *Id.* at 706. Punitive damages are awarded both to deter and to punish. Contract damages, on the other hand, are based in compensation and are "limited to those losses which are reasonably foreseeable when the contract is made." *Id.* The court reflects that "these limitations have led to the 'more or less inevitable efforts of lawyers to turn every breach of contract into a tort'." *Id.* Therefore, when courts are faced "with the question whether a simple breach of contract, accompanied by ulterior motives, in the absence of an independent tort, justifies an award of punitive damages . . . [they] answer . . . the question in the negative." *Id.*

The court concludes that proof of an independent, willful tort, beyond merely a breach of a contractual duty, regardless of the motives underlying the breach, is a necessary predicate to the granting of punitive damages. *Id.* at 707. The court reflects that the facts viewed in a light most favorable to Haley "show only a breach of contract inspired by an ulterior motive." *Id.* In footnote two, the court concludes that while "this may show a willful desire to breach the contract to benefit Kamlar . . . it falls short of showing a malicious desire to injure the plaintiff, which would be required even by those jurisdictions which permit punitive damages for contracts breached with malice." *Id.*

The court's conclusion is analogous to the instant matter and can stand for the court's ruling on Spence's claim for punitive damages. There is no showing of a malicious desire to injure the plaintiff. There were, quite possibly, ulterior motives to ESIS's actions. Such actions, however, do not permit the granting of punitive damages.

The issue at the bottom of the pyramidal structure is whether an intentional infliction of emotional distress

cause of action exists. The plaintiff fails to meet the requirements of *Womack*. The structure, lacking a base, crumbles without a successful foundational argument. ESIS's demurrer is therefore sustained as to the intentional infliction of emotional distress issue.

The remainder of the plaintiff's arguments are like the shell of a nut that forms an outer layer which must be cracked to get to the kernel and then is generally discarded. As the Industrial Commission has exclusive jurisdiction over the plaintiff's claims and as there are no punitive damages in the instant essentially contract action without the existence of the independent emotional distress tort, ESIS's demurrer is also sustained as to these two issues. The case is dismissed with prejudice.